FILED
2010 May-19  PM 12:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN  DIVISION

LAGENIA CAROLYN ARMSTRONG,    ]
    ]
    **Plaintiff,**    ]
    ]
**v.**    ]
    ]    **CV-09-BE-2470-S**
**DANNY MORTON, J.G. POOLE, T.E.**    ]
**NEILL, and BLOUNT COUNTY and/or**    ]
**THE BLOUNT COUNTY**    ]
**COMMISSION,**    ]
    ]
    **Defendants.**    ]
    ]

## MEMORANDUM OPINION

This matter is before the court on "Defendants Danny Morton, J.G. Poole, and T.E. Neill's Motion for Partial Dismissal" (doc. 4) and "Defendant Blount County and/or Blount County Commission's Motion to Dismiss" (doc. 6).   These motions have been fully briefed. Although the title of the individual Defendants' motion suggests that it is a motion for *partial* dismissal, the text of both motions and accompanying briefs request that this court dismiss *all* claims against them: claims brought pursuant to Alabama law alleging assault and battery, false imprisonment and malicious prosecution; and a federal claim brought pursuant to 42 U.S.C. § 1983 alleging various constitutional violations, including seizure without probable cause and the use of excessive force. For the reasons stated in this opinion, the court finds that the motion of Defendant Blount County and/or Blount Count Commission is due to be GRANTED and the individual Defendants' motion is due to be GRANTED in part and DENIED in part.

## I.  FACTS

The Complaint contains the following factual allegations, which the court accepts as true for the purposes of the pending motions.

On November 6, 2007, Plaintiff Armstrong and her nephew, John Marsh, were in Marsh's car in Armstrong's driveway when several sheriffs' patrol cars arrived.  Marsh and Armstrong had just returned from showing farm equipment to a third party at the home of Armstrong's brother, which was located nearby with access off the same driveway as Armstrong's home.  The patrol cars blocked and surrounded Marsh's car, and officers exited their cars with guns drawn, yelling for Armstrong and Marsh to exit the car and lie face down on the gravel driveway.  When Armstrong asked what was going on and did not immediately lie down, the officers told her to "shut up," and threw her across the hood of the car, wrenched both arms behind her back, put her in handcuffs, and forced her to the ground.  Either at this point or later, in response to the officer's question "What do we do now?," the person referred to as "Chief or Lt." responded that they should take Armstrong and Marsh in "and then we will come up with something or words to that effect."  (Compl. doc. 1-1, at 4 ¶14).  When Armstrong, who was approximately 60 years old, tried to inform the officers of her severe back problems and general health issues, they ignored her and forced her into the sheriff's cruiser without advising her of her rights or stating why they were taking her with them.

When they arrived at the county jail, no one advised Armstrong or her nephew that they were under arrest nor did anyone advise them of the charges against them.  While at the jail, Armstrong and Marsh overheard conversations among the Defendants and other unnamed officers and jail personnel trying to determine the crime with which to charge Armstrong and

Marsh.  In response to questions about what "the lady" did wrong, no one provided an answer, but the officers and jailers acknowledged that they had to charge Armstrong with something to justify their treatment of her.

Armstrong continued to ask for an explanation, and she also complained about spasms in her back, stating that she might need a doctor.  In response, a jailer screamed an obscenity and began to spray something in Armstrong's face that blinded her and caused her to fall to the floor, convulse, and stop breathing. After Armstrong's adverse reaction to the substance sprayed at her, someone dragged Armstrong across the floor to a fire hose, and one of the officers or jailers sprayed her with large volumes of water.  Someone at the jail also began performing CPR on Armstrong and shocked her with a defibrillator.  An ambulance took Armstrong to the emergency room where she was treated and stabilized.

Eventually, Armstrong was taken back to the jail where she was told that she was under arrest and was given a piece of paper signed by LT. T.E. Neill, Deputy Sheriff, and approved by Danny Morton, Sheriff,  stating that the charge against her was "obstructia [sic] of Gov. oper." Marsh was charged with the same criminal conduct.  Armstrong later learned that the arresting officer was J. G. Poole.

Marsh was eventually tried before the District Court for Blount County, and the Judge entered a Judgment of Acquittal at the close of the State's case.  The State dismissed the case against Armstrong without a trial.

Armstrong initiated the instant suit by filing a Complaint on November 6, 2009 in the Circuit Court of Blount County, Alabama.  Defendants removed the case to federal court in December of 2009 and filed the motions to dismiss shortly after removal.

3

## II.  LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)).  A plaintiff must provide the grounds of his entitlement, but Rule 8 generally does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley*, 355 U.S. at 47).   It does, however, "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal* ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009).   Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertions" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557.

The Supreme Court explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1948 (quoting and explaining its decision in *Twombly*, 550 U.S. at 570).  To be plausible on its face, the claim must contain enough facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.*   "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 557).

The Supreme Court has recently identified "two working principles" for the district court to use in applying the facial plausibility standard.  The first principle is that, in evaluating motions to dismiss, the court must assume the veracity of *well-pleaded factual* allegations; however,  the court does not have to accept as true legal conclusions even when "couched as [] factual allegation[s]" or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S. C. at 1949-50.   The second principle is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1150.  Thus, under prong one, the court determines the factual allegations that are well-pleaded and assumes their veracity, and then proceeds, under prong two, to determine the claim's plausibility given the well-pleaded facts.  That task  is "context-specific" and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense. . . to infer more than the mere possibility of misconduct." *Id.*  If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claim must be dismissed.  *Id.*

*Qualified Immunity Standard*

The doctrine of qualified immunity provides that a government official acting within his discretionary authority is immune from suit unless his conduct "violates clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Keating v. City of Miami,* 598 F.3d 753, 762 (11th Cir. 2010) (quoting *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1366 (11th Cir. 1998) (alteration in original)).  To prove his entitlement to qualified immunity, the "public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. . . . Once the

defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Penley ex. rel. Estate of Penley v. Eslinger*, ___ F.3d ___, 210 WL 1741557 (11th Cir. May 3, 2010) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)).  To determine whether qualified immunity is then appropriate, the Supreme Court has established a two-part test and has granted the district court discretion about the order in which it addresses each part. *Pearson v. Callahan*, ___ U.S. ____, 129 S. Ct. 808, 818 (2009).  One part of the test is "whether [the] plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  The second part of the test is whether the constitutional violation was clearly established at the time of the alleged wrongful conduct. *Saucier*, 533 U.S. at 201.  The officer is entitled to qualified immunity unless the plaintiff establishes both parts of the test.

*Supervisory Liability Standard*

According to well-established Eleventh Circuit law, a plaintiff may not bring § 1983 claims against supervisory officials based on vicarious liability or the doctrine of respondeat superior. *Keating*, 598 F.3d at 762; *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994).  "However, supervisors are liable under § 1983 'either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation.'" *Keating*, 598 F.3d at 762 (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003)).  Where the alleged wrongful acts are those of a subordinate, a plaintiff may establish a causal connection between a supervisory official's acts and those wrongful acts in any of the following ways: (1) alleging facts

6

supporting the supervisor's notice of a widespread history of abuse that he neglected to correct (*Gonzales*, 325 F.3d at 1234); (2) alleging facts supporting the supervisor's implementation of a custom or policy that resulted in deliberate indifference to constitutional rights (*Id.* at 1234-35); or (3) alleging "facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." (*Id.* at 1235).

*Heightened Pleading Standard for § 1983 Actions*

As discussed later in this opinion, pleading standards increase in the Eleventh Circuit where a plaintiff asserts a claim under 42 U.S.C. § 1983, and a defendant raises his entitlement to qualified immunity. *See, e.g., Keating*, 598 F.3d at 762-3 (acknowledging the existence of a heightened pleading standard in the Eleventh Circuit and quoting with approval the following statement in *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1366 (11th Cir. 1998): "this circuit, along with others, has tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out nonmeritorious claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out its claim"). To satisfy the heightened pleading requirement, a plaintiff must plead only "'some factual detail' from which the court may determine whether Defendants' alleged actions violated a clearly established constitutional right." *Amnesty Int'l., USA v. Battle*, 559 F.3d 1170, 1180 (11th Cir. 2009). The complaint should specify "what alleged rights were violated," "which of [the defendant's] actions allegedly violated those rights" and provide enough information for the court to determine "whether those rights were clearly established when the[] incidents occurred." *Id.* "Therefore, in a § 1983 action, 'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has

7

violated the Constitution.'" *Keating*, 598 F.3d at 763 (quoting *Iqbal*, 129 S.Ct. at 1948).

## III.  DISCUSSION

Armstrong's Complaint contains four counts: Count One - assault and battery brought under Alabama law; Count Two - false imprisonment brought under Alabama law; Count Three - malicious prosecution, brought under Alabama law; and Count Four - violation of constitutional rights protected by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, brought pursuant to 42 U.S.C. § 1983.  Defendants removed the case to federal court, and subsequently filed the pending motions to dismiss with accompanying briefs.

In her response to Defendants' motions to dismiss, Armstrong acknowledged that Blount County and the County Commission were due to be dismissed as Defendants.  Regarding the individually-named Defendants, Armstrong acknowledged that the claims against them in their official capacities were due to be dismissed.  Further, she agreed that all state law claims against Defendant Morton in his individual capacity were due to be dismissed.  Finally, she stated that state law claims against other individually-named Defendants should be dismissed if they could prove that they were deputies or jailers acting in the line and scope of their duties; however, she argued that the record did not yet so reflect. (Pl.'s Br. doc. 13, at 2).

### A.  Claims that Armstrong Acknowledges Are Due to Be Dismissed

In light of Armstrong's acknowledgement that certain claims are due to be dismissed, the court will take the following action.

1.  The court will dismiss all claims against Blount County and will dismiss Blount County as a party Defendant.

2.  The court will dismiss all claims against the Blount County Commission will dismiss

the Blount County Commission as a party Defendant.

3.  The court will dismiss all claims against Danny Morton, J.G. Poole, and T.E. Neill *in their official capacities.*

4.  The court will dismiss all claims asserted in Counts One, Two, and Three (state law claims) against Danny Morton in his *individual* capacity.

### B.  Claims against Fictitious Parties

Defendants argue that fictitious party practice is generally not permitted in federal court, and thus, requests this court to dismiss all fictitious parties.  *New Sports & Recreation, Inc.*, 114 F.3d 1092, 1094 n. 1 (11th Cir. 1997).  The court notes that some circumstances exist when a federal court *may* allow fictitious party pleading. *See, e.g., Saxton v. ACF Indus.*, 254 F.3d 959, 965-66 (11th Cir. 2001) (addressing the relation-back of amendments substituting named parties for fictitious parties in federal court).  The court recognizes the difficulty of identifying officers and jailers that the Plaintiff does not know, particularly when at the time of some of the alleged wrongful conduct she claims to have been in pain, distress, and/or unconscious.  However, in the instant case, the court set in its Scheduling Order  (doc. 17) a deadline of April 26, 2010 for Plaintiff to amend pleadings and/or join additional parties. The April 2010 deadline expired without further amendment of pleadings to identify fictitious parties or a motion to extend the deadline. Accordingly, assuming *arguendo* – without making a specific finding – that this case represents one in which the fictitious parties were properly named initially, the court finds that all remaining fictitious party Defendants in this case are due to be DISMISSED WITHOUT PREJUDICE.

9

**C.  State Claims Against T.E. Neill and J.G. Poole in their Individual Capacities**

As Armstrong acknowledged in her responsive brief, any state law claims asserted against deputy sheriffs acting in the line and scope of their duties are due to be dismissed.  *See Ex parte Sumner County*, 953 So. 2d 1235, 1239 (Ala. 2006) (stating that under Article 1, § 14 of the Alabama Constitution, sheriffs and deputy sheriffs have absolute immunity from lawsuits when "acting within the line and scope of their employment."); *Ex parte Purvis*, 689 So. 2d 794, 795-96 (Ala. 1996) (holding that sheriff and deputy were entitled to sovereign immunity in both their individual and official capacities).  Thus, Armstrong agrees that the sheriff  "and those who were his true deputies acting in that capacity and according to their authority" are entitled to immunity. (Pl.'s Br. doc. 13, at 2).   However, Armstrong objects to the dismissal of state claims against Neill and Poole at this point, arguing that the record does not yet reflect that they were deputy sheriffs acting within the line and scope of their authority.

1.  T.E. Neill

Paragraph 19 of the Complaint does identify Defendant Neill as a deputy sheriff. Accordingly, if the Complaint allegations indicate the actions complained of were within the line and scope of his authority, he would also be entitled to immunity as to the state law claims. While the Complaint does not always specify which Defendants committed which actions, all of the alleged wrongful acts occurred during the officers' taking Armstrong into custody or detaining her at the county jail.  In other words, the alleged wrongful conduct occurred while the officers were performing their duties, even if they were performing their duties incorrectly.

Under similar circumstances, the Supreme Court of Alabama has upheld the immunity of sheriffs and deputy sheriffs.  For example, in the decision of *Ex parte Sumter County*, the

10

Supreme Court of Alabama examined claims that the sheriff and deputy sheriff were acting in bad faith and beyond the scope of their authority and had failed to follow jail procedures resulting in the death of an inmate in the county jail.  953 So. 2d 1235, 1236-37 (Ala. 2006). Noting that "the events involving the sheriff and deputy sheriffs were alleged to have occurred at the county jail," the Court found that neither the Complaint nor the brief responding to the motion to dismiss alleged "any fact that would tend to show that the sheriff or deputy sheriffs were not working within the line and scope of their employment when the tragic events . . . occurred." *Id.* at 1240. (Ala. 2006).  Finding that absolute immunity protected the sheriff and deputies from suit, the Supreme Court granted those defendants' petition for a writ of mandamus and directed the trial court to grant their motion to dismiss.  *Id.  See also Ex parte Purvis*, 689 So. 2d 794 (Ala. 1996) (upholding deputy's immunity and finding that the complaint's allegations that the deputy "intentionally failed to follow proper procedures for approaching, detaining and apprehending [suspect]" were not fatal to his immunity defense); *Karrick v. Johnson*, 659 So. 2d 77, 79 (Ala. 1995) (upholding the immunity of a deputy sheriff as to allegations of malicious prosecution and false imprisonment).

In the instant case, the court finds that Deputy Neill was acting within the line and scope of his employment when the alleged wrongful actions occurred.  Accordingly, the court concludes that, pursuant to the provisions of Article 1, § 14 of the Alabama Constitution of 1901, he is immune from claims asserted under state law.

2.  J.G. Poole

The Complaint does not specifically identify Defendant Poole as a deputy sheriff.  It does identify him as the listed arresting officer and states that he is an employee of Blount County, the

Blount County Sheriff's Department *or* a jailer *or* a deputy at the jail.  In their briefs, Defendants argue that Poole's position of deputy is obvious from the face of the complaint.  Because § 14-10-1 of the Alabama Code provides that only deputies and constables have authority to make arrests and because the Complaint identifies Poole as an arresting officer, they insist that Poole must necessarily be a deputy.  The court disagrees that the syllogism's conclusion is *necessarily* valid.  If Poole was indeed working as a deputy at the time of the acts made the basis of the Complaint, then that fact will be easy enough to prove; however, the court finds that the allegations of the Complaint do not establish his entitlement to absolute immunity.  Accordingly, the court finds that the motion to dismiss is due to be DENIED as to claims against J.G. Poole based on the defense of absolute immunity.

Thus, the only claims brought pursuant to Alabama law that  remain are those in Counts One, Two, and Three against J.G. Poole.

**D.  Federal Claims against Individually Named Defendants**

The remaining claims in Count Four of the Complaint assert federal claims pursuant to § 1983, alleging violations of the Fourth, Eighth, and Fourteenth Amendments against the three individual Defendants.

1.  Eighth Amendment Claims

As the Defendants pointed out in their brief, the Eighth Amendment's Cruel and Unusual Punishment Clause applies to mistreatment of *convicted* prisoners in custody but not to mistreatment of pretrial detainees or other persons in law enforcement custody who have not yet been convicted of crimes.  *See, e.g., Cottrell v. Caldwell,* 84 F.3d 1480, 1490 (11th Cir. 1996). In the instant case, Armstrong was not a convicted prisoner in custody at the time of the alleged

mistreatment.  Accordingly, the court finds that the claims alleging violations of the Eighth

Amendment to the United States Constitution are due to be DISMISSED WITH PREJUDICE.

    2.  Fourth and Fourteenth Amendment Claims

    Defendants also argue that Armstrong's claims asserting a violation of the Fourteenth

Amendment are due to be dismissed because at the time of the alleged mistreatment, Armstrong

was not technically a person under arrest or a pretrial detainee; Defendants claim that the only

possible constitutional violation must fall under the Fourth Amendment.  The facts of the

Complaint indicate that Armstrong was not advised officially that she was under arrest and

charged with a crime until *after* she returned to the jail from the hospital and *after* the alleged

mistreatment occurred.  However, the Complaint also alleges that some of the most egregious

mistreatment occurred after the officers had taken Armstrong into custody and transported her to

the jail.  Defendants have provided no authority for their rather blithe assumption that

Fourteenth Amendment rights are not implicated in situations where officers take a person into

custody but improperly delay advising her officially of her arrest and specific charges.  Because

the Fourteenth Amendment governs claims involving the mistreatment of those persons under

arrest or in detention, *see, e.g., Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996),  the

court questions whether the officers can divest Armstrong of rights under the Fourteenth

Amendment by delaying the actual arrest.  In other words, if the officers had performed their job

properly, promptly informing her of her arrest and the specific charges against her, Armstrong's

Fourteenth Amendment rights would have attached, so the improper performance of their job

should not logically compound the injustice by taking those rights away.  If Defendants can

provide case law support for their argument that their actions implicate no Fourteenth

Amendment rights in this case, the court will consider it.  However, at this time, the court will

not dismiss *on that basis* Armstrong's claims for violation of her Fourteenth Amendment rights.

The court will proceed to analyze qualified immunity as to the Fourth and Fourteenth

Amendment claims.

*Qualified Immunity*

In response to the federal claims asserted against them, Defendants Morton, Neill and

Poole invoke the protections of qualified immunity.  "The doctrine of qualified immunity

provides that government officials performing discretionary functions generally are shielded from

liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known."  *Case v. Eslinger*, 555

F.3d 1317, 1325 (11th Cir. 2009) (internal quotations omitted).  "Qualified immunity balances

two important interests – the need to hold public officials accountable when they exercise power

irresponsibly and the need to shield officials from harassment, distraction, and liability when they

perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. ___, 129 S.Ct. 808, 815 (2009).

The Eleventh Circuit has emphasized that qualified immunity provides "*an immunity from suit*

rather than a mere defense to liability."  *Bates v. Harvey*, 518 F.3d 1233, 1242 (11th Cir. 2008)

(quoting *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001) (emphasis in *Saucier*)).  Accordingly, this

court will follow the instructions of the Supreme Court and the Eleventh Circuit to resolve

immunity issues at the "earliest possible stage in litigation."  *Case*, 555 F.3d at 1325 (quoting

*Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

To invoke qualified immunity, Defendants Morton, Neill, and Poole must first

14

demonstrate that they were acting within the scope of their discretionary authority.  In their brief, Defendants insist that this issue does not appear to be in dispute, and indeed, Armstrong's responsive brief does not address it.  In any event, to establish that they were acting within their discretionary authority, Defendants need only show that the acts in question "are of the type that fell within the employee[s'] job responsibilities."  *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004). The court finds that, based on the allegations in the Complaint, Defendants were engaged in discretionary functions at all times relevant to this suit.

The burden thus shifts to Armstrong to prove that Defendants violated a clearly established constitutional right, and therefore, are not entitled to qualified immunity. *See Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004).

1.  Seizure without Probable Cause

Armstrong argues that Defendants violated her Fourth Amendment right not to be subjected to seizure/illegal arrest without probable cause or otherwise in violation of due process of law.  "[W]hen the claim is that a search and seizure or arrest violated the Fourth Amendment, qualified immunity depends upon whether probable cause existed." *Cottrell,* 85 F.3d at 1485 n. 1.  Based on the facts alleged in the Complaint, which the court must assume to be true for the purposes of this motion, the officers seizing Armstrong lacked even arguable probable cause for doing so; Armstrong was on her own farm property at the time, had just returned from showing farm equipment on adjacent land to a third party, and had not and was not engaged in illegal activity at the time of her seizure.  Thus, Armstrong has alleged a violation of her clearly established rights under the Fourth Amendment. *See Sheth v. Webster*, 145 F.3d 1231, 1238 (11th Cir. 1998).  The harder question is whether she has alleged such a violation as to *all*

individually named Defendants.

Because the Complaint identifies Defendant Poole as the arresting officer, the court finds that Armstrong has alleged a violation of clearly established law as to him, and thus, his claim of qualified immunity cannot succeed at this stage.  However, the Complaint does not state clearly whether the other individually named Defendants participated in the seizure and in the "what do we do now?" scene at the jail.  The lack of specificity of the Complaint's allegations regarding the role of each individual Defendant in the alleged violations is particularly troublesome in light of the Eleventh Circuit's heightened pleading standard in cases, such as this one, where qualified immunity is invoked.  *See Amnesty Int'l., USA v. Battle*, 559 F.3d 1170, 1179-80 (11th Cir. 2009).   To comply with the heightened pleading standard, the complaint should specify "what alleged rights were violated," "which of [the defendant's] actions allegedly violated those rights" and provide enough information for the court to determine "whether those rights were clearly established when the[] incidents occurred." *Id.* at 1180.

In evaluating whether the Complaint meets the heightened pleading standard as to Fourth Amendment claims against Defendant Neill, the court notes that although Count Four of the Complaint generally demands judgment against "the Defendants," it does not state clearly that Defendant Neill was present when Armstrong was seized and/or brought to the jail.  Paragraph 39 of Count Four states that Morton, Poole, and fictitious Defendants participated in or failed to object to the department's custom and policy of constitutional violations, but it does not name Defendant Neill.  Indeed, except to the extent that it incorporates by reference all preceding paragraphs, Count Four fails to specifically name Defendant Neill at all, despite mentioning the other named Defendants.

16

Having found no mention of Defendant Neill in Count Four, the court has scoured each preceding paragraph of the Complaint to find references to Defendant Neill.  The only references to him are in paragraphs 3, 14 and 19, and 26 of the fact section.  Paragraph 14  states:  "even the officer in charge, referred to as Chief or Lt., could not answer one of the others who asked him, 'what do we do now?', after the obviously innocent victims were disabled, hand-cuffed and injured.  His reply was take them in and then we will come up with something or words  to that effect."  In light of paragraph 19's  identification of Neill as a lieutenant, this statement indicates that Neill was present at the farm when Armstrong was seized, and further, that he directed his men to take Armstrong to the jail knowing she was innocent and that he expressed his plan to fabricate a charge.  Paragraph 19 also states that the piece of paper Armstrong eventually received charging her with obstructing government operations sported Neill's signature.  If Armstrong's proof eventually supports those alleged facts and allegations, then Neill would not be entitled to qualified immunity.  Statements in the Complaint sufficiently give notice of the constitutional rights violated and the acts of Defendant Neill; thus, the court will not dismiss the Fourth Amendment claims that Defendant Neill seized Armstrong without probable cause.

As to Sheriff Morton, the court notes that Count Four's allegations against him focus on the sheriff's supervisory role.  Well-established Eleventh Circuit law provides that a plaintiff may not bring § 1983 claims against the supervisory officials based on vicarious liability or respondeat superior liability.  *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010).  A supervisory official may be liable, however, under § 1983 "either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional violation."  *Gonzalez v.*

17

*Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003).  Where the alleged wrongful acts are those of a subordinate, a plaintiff may establish a causal connection between a supervisory official's acts and those wrongful acts in the following ways: (1) alleging facts supporting the supervisor's notice of a widespread history of abuse that he neglected to correct; (2) alleging facts supporting the supervisor's implementation of a custom or policy that resulted in deliberate indifference to constitutional rights; or (3) alleging "facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Gonzales*, 325 F.3d at 1234-35.

Although Count Four of the Complaint in the instant case does name Morton, it does not allege that Morton  personally participated in the initial seizure of Armstrong or directly participated in the events at the jail.  The Complaint's fact section stated that the piece of paper Armstrong received with her charge indicated that Morton had approved the charge with a date of November  6, 2007, but does not specifically state that he was aware of the circumstances lacking probable cause when he approved it. Accordingly, because the Complaint does not sufficiently allege Morton's *direct* participation in the constitutional violations, the Complaint must allege a causal connection between his actions and those violating Armstrong's constitutional rights.

In an attempt to establish a causal connection, Armstrong's Count Four generally alleges that Morton was aware of "repeated and regular violation of the well established and known constitutional rights of those individuals coming into contact with Sheriff's department officers and jail employees."  (doc. 1-1, at 7 ¶ 39).  Further, it generally alleges that Morton established policies, procedures, and customs within the department that caused and condoned such

18

violations.  *Id.*  It states that "individuals ... have often been arrested without just cause and or

absent any misconduct whatsoever ... and that Morton has ignored these constitutional violations

and  "has not taken any steps toward monitoring, preventing or rectifying the clearly deficient

system...." (doc. 1-1, at 7 ¶¶ 41 & 43).

These allegations are nothing more than  "[t]hreadbare recitals of the elements of a cause

of action, supported by mere conclusory statements," which the Supreme Court has found

insufficient to survive a motion to dismiss under its plausibility standard.  *Iqbal*, 129 S. Ct. at

1949.  The court is "not bound to accept as true a legal conclusion couched as a factual

allegation."  *Id*. at 1950 (quoting *Twombly*, 550 U.S. at 555).  The Complaint in the instant case

does not state *facts* supporting its allegations that Morton had previously ignored widespread

abuse of Fourth Amendment rights or that Morton established policies violating such rights. The

Complaint provides no *facts* giving an example of a prior case of abuse or giving specific

information about the violative policy such as its contents and whether it was in effect at the

relevant time.  Further, the Complaint provides no *facts* supporting Morton's awareness that the

policy violated such rights or that prior cases of abuse existed.  *See Marsh v. Butler County*, 268

F.3d 1014, 1036 (11th Cir. 2001) (finding that case against sheriff as a policymaker failed to state

a claim because the Complaint alleged "no facts from which a fact-finder could find that the

Sheriff actually knew her release policy posed a sufficiently substantial risk of serious harm to

inmates" and did not allege that the Sheriff was aware of earlier violations of constitutional rights

flowing from this kind of policy).  Indeed, if the allegations in the instant case are sufficient to

withstand a motion to dismiss, then any plaintiff in a § 1983 case could craft sufficient

allegations against a supervisor simply by taking these very general allegations and substituting

19

the name of the supervisor he wishes to sue without including specific facts as support.  Such is not the standard, at least in the Eleventh Circuit.

The court finds that Plaintiff in the instant case has failed to allege sufficient *facts* concerning Sheriff Morton to withstand a motion to dismiss, especially in light of the heightened pleading standard.  Accordingly, the court will DISMISS WITHOUT PREJUDICE[1] the Fourth Amendment claim against Sheriff Morton alleging seizure and eventual arrest without arguable probable cause.  The Fourth Amendment claim for seizure and eventual arrest without arguable probable cause will proceed against Defendants Poole and Neill.

2.  Excessive Force Claims

Count Four of the Complaint also asserts an excessive force claim.  It specifies various acts of alleged excessive force against Armstrong, including throwing Armstrong across the hood of the car, forcing her to the ground, and gassing her at the jail until she turned blue, stopped breathing, and required emergency transportation to the hospital.  These alleged actions are fairly specific, and the Complaint does place Defendants Neill and Poole at the farm as the officers involved in taking Armstrong into custody.  Accordingly, the court finds that Neill and Poole's motion to dismiss is due to be DENIED as to the claims for excessive force allegedly committed at or around the time the officers took Armstrong into custody.

However, the Complaint does not specify who committed the acts of force at the jail, other than calling that actor a "jailer."  Because the Complaint refers to Neill and Poole either by name or by the term "officers," the court must assume that the jailer is some other person who is

---

[1]The court recognizes that discovery may reveal facts that would support a claim against Sheriff Morton; if so, Armstrong may seek leave to amend.

not a named Defendant.  Accordingly, this claim for excessive force committed at the jail cannot proceed against an unnamed "jailer," and the court will DISMISS that claim.

As to excessive force claims against Sheriff Morton, Plaintiff does not allege that Morton personally applied excessive force to Armstrong or otherwise directly participated in the use of excessive force against her.  To the extent that her claims against Morton are based upon Morton's liability as a supervisor for his subordinates' actions, those claims suffer from the same pleading defects as the claims alleging seizure without probable cause; the court finds that Plaintiff has failed to allege sufficient *facts* to establish a causal connection and withstand a motion to dismiss, especially in light of the fact that a heightened pleading standard applies. Therefore, the court will DISMISS WITHOUT PREJUDICE the excessive force claims as to Sheriff Morton.

## IV.  CONCLUSION

In sum, the court finds that

•       the motion to dismiss of Defendants Blount County and Blount County Commission is due to be GRANTED and they are due to be DISMISSED WITH PREJUDICE as party Defendants.

•       the motion of  the individual Defendants is due to be GRANTED in part and DENIED in part as designated below.


Claims against Defendant Poole**:**

\* The motion is due to be GRANTED as to all claims in his *official* capacity;  and as to federal claims in Count Four asserted in his *individual capacity* involving

alleged excessive force committed at the jail.  The court will DISMISS those claims WITH PREJUDICE.

* The motion is due to be DENIED as to state claims in Counts One, Two, and Three in his *individual* capacity, and as to the following federal claims in Count Four: the claim that Poole seized Armstrong without probable cause; and the excessive force claim against Poole for acts allegedly committed at or around the seizure of Armstrong at the farm.  The court finds that, at this stage, Poole is not entitled to absolute immunity as to the state claims and is not entitled to qualified immunity as to the federal claims against him in his individual capacity.


Claims against Defendant Neill:

*The motion is due to be GRANTED as to all claims in his *official* capacity; as to all state claims in Counts One, Two, and Three asserted in his *individual* capacity, because the court finds that Neill is entitled to absolute immunity; and as to federal claims in Count Four asserted in his *individual capacity* involving alleged excessive force committed at the jail.  The court will DISMISS these claims WITH PREJUDICE.

*The motion is due to be DENIED as to the following federal claims in Count Four asserted in his *individual* capacity: the claim that Neill seized Armstrong without probable cause; and the excessive force claim against Neill for acts allegedly committed at or around the seizure of Armstrong at the farm.  The court finds that Neill is not entitled to qualified immunity at this stage.

22

Claims against Defendant Morton:

*The motion is due to be GRANTED as to all claims asserted against him in his *official capacity* and as to all state and federal claims asserted against him in his *individual* capacity.  The court finds that Morton is entitled to absolute immunity as to the state claims, and will DISMISS those claims WITH PREJUDICE.  The court further finds that the federal claims against Morton do not meet the heightened pleading standard, and the court will DISMISS those claims WITHOUT PREJUDICE at this time.

Claims against Fictitious Party Defendants:

*The motion is due to be GRANTED as to all claims against fictitious party Defendants.  The court will DISMISS those claims WITHOUT PREJUDICE.

Dated this 19th day of May, 2010.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE